John Morrison
MORRISON, MOTL & SHERWOOD
401 N. Last Chance Gulch
Helena, MT  59601
(406) 442-3261
(406) 443-7294 (fax)
*Attorney for Plaintiffs*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| KEVIN and SUSAN SULLIVAN, husband and wife, | Cause No. _____ |
| Plaintiffs, | **COMPLAINT FOR DAMAGES** |
| vs. | |
| YOUNG LIVING, a Utah Corporation, YOUNG LIVING ESSENTIAL OILS, a Utah limited liability company, and CHERIE ROSS, a married person, | |
| Defendants. | |

**COME NOW** Plaintiffs Kevin and Susan Sullivan and allege as follows:

## I.   PARTIES AND JURISDICTION

1.  Plaintiffs are residents of the state of Washington, who own real property and conduct business in Flathead County, Montana.

2.  Defendant Young Living is a Utah corporation with its headquarters at 3125 West Executive Parkway, Lehi, Utah, 84043, which does business in Flathead

County, Montana and Defendant Young Living Essential Oils, LLC is a Utah limited liability company at the same address (both referred to as 'Young Living" herein).

3. Defendant Cherie Ross is a resident of the state of Minnesota, who owns real property and does business in Flathead County, Montana. Defendant Ross has stated in court pleadings and testified that she is a resident of the state of Montana.

4. The judgment at issue was entered by the Montana District Court for Flathead County, *Sullivan, et u.x. v. Ross, et al.,* Cause No. DV-09-736A.

5. The judgment arose from a transaction involving real property in Flathead County, Montana.

6. Defendants committed one or more of the acts herein in furtherance of their conspiracy, in Flathead County, Montana.

7. This Court has personal jurisdiction over the parties.

8. This Court has subject matter jurisdiction, pursuant to 18 U.S.C. § 1964(c), 28 U.S.C. § 1331, and 28 U.S.C. § 1367(a).

9. Venue is proper in this Court, pursuant to 18 U.S.C. § 1965(a) and 28 U.S.C. § 1391(b) and (c).

## II. FACTUAL ALLEGATIONS

10. Plaintiffs sold a commercial building ("the Building") at 12 Spokane Street, Whitefish, Montana to Defendant Ross. On June 1, 2008, Ross defaulted,

failing to pay a $600,000 balloon payment when due.

11.  Plaintiffs sued Defendant Ross and obtained judgment against Ross on October 20, 2010 in the total amount of $543,294 ("the Judgment").  After sale of the Building at a foreclosure sale on March 17, 2011 for the amount of $290,000, the balance owed on the judgment was the amount of $279,087, with post-judgment interest accruing at 7% upon the amount still owed on the contract and the statutory rate of 10% upon the attorney fees and costs portion of the judgment, in addition to post-judgment attorneys fees.

12.  Defendant Young Living operates a multi-level marketing business which markets and sells "essential oils." Ross began as a Young Living distributor through her solely-owned corporation, RCC, Inc. in the 1990s, and became one of Young Living's largest and most successful distributors.  In the period 2010 to present, Ross' average monthly income from Young Living was the amount of $40,000.

13.  In March 2010, Ross submitted a detailed financial statement to obtain a loan from Three Rivers Bank in Kalispell, Montana.  Ross executed the financial statement and affirmed that the information was accurate and that the bank could rely upon it.  In the financial statement, Ross stated she received $40,000 per month from Young Living, and that her net worth was $5.5 million.

14.  After defaulting on her loan with Plaintiffs, Ross and Young Living

transferred Ross' Young Living distributorship from RCC, Inc. to a new corporation owned by Ross, Essential for Life, Inc. ("EFL"), in 2010. Young Living began mailing Ross her monthly Young Living payments to EFL, and not RCC, starting in November 2010, shortly after the Judgment was entered. In setting up EFL, Ross used the services of a Carson City, Nevada attorney, Steven Stucker, owner of Acacia Business Solutions, which specializes in helping debtors avoid payment of their debts. Its website advertises services that help "avert garnishments, attachments and other costly legal situations."

15. After the March 17, 2011 foreclosure sale of the Building, Ross filed a motion in the Montana action, seeking a declaration that the Plaintiffs' deficiency judgment was unenforceable. The court denied Ross' motion, and the Montana Supreme Court affirmed that order.

16. Plaintiffs registered their judgment in the courts of both Minnesota and Utah.

17. In the Minnesota proceeding, Ross filed a sworn financial statement that she had earned less than $10,000 in 2010, and that she had a negative net worth. This statement was knowingly false and was intended to deceive Plaintiffs so they would discontinue judgment collection activities. In fact, EFL's 2010 1099 from Young Living showed "salary, bonuses and commissions of $464,400." Ross completely controlled EFL and it was her alter ego.

18.  Plaintiffs filed a motion in the Minnesota proceeding to transfer Ross' EFL stock to Plaintiffs. The hearing on that motion was scheduled for October 31, 2011.

19.  On October 27, 2011 Ross' Minnesota lawyer, David Anderson, wrote an email to Plaintiff Kevin Sullivan, advising that:

> Gentlemen: Via phone conference with the General Counsel of Young Living, Inc. today I have confirmed that any involuntary transfer of ownership or interest in EFL, Inc. whether by court order or otherwise will result in immediate termination of the distributorship and the cessation of payment from Young Living, Inc.

Sullivan responded the next day:

> Dave—Thanks for this information. Please have Young Living confirm same in writing this morning, and also that Cherie Ross and any entity in which she has or will have any ownership interest will likewise no longer be Young Living distributors or be allowed to become Young Living distributors.

Anderson did not respond to Sullivan's requests.  Nor did Young Living.

20.  On or about November 6, 2011, the Minnesota court ordered the transfer of Ross' EFL stock to Plaintiffs.

21.  Plaintiffs issued a subpoena to Young Living in the Utah proceedings for Ross' records with that company for the prior two years, including her contracts, any documentation of Ross' alleged "distributorship termination" (which termination attorney Anderson had announced to Plaintiffs would occur immediately but had failed to produce documentation to Plaintiffs as requested),

and documents regarding her income from Young Living.

22. After Young Living was served with the Utah subpoena, Ross' Minnesota attorney Anderson communicated with Young Living in Utah about strategies to quash Plaintiffs' subpoena, in both telephone conferences and email communications. Shortly afterwards, Young Living filed a motion to quash Plaintiffs' subpoena in the Utah proceedings. The intent of these acts by Ross and Young Living was to conceal from Plaintiffs a fraudulent conspiracy, summarized below.

23. On October 28, 2011, Ross' attorney Stucker as "Buyer/Transferee" executed a Young Living document "accepting purchase or transfer of EFL's distributorship" with Young Living. Young Living maintained this document at its offices.

24. On November 8, 2011, Ross' deposition was taken in Whitefish, Montana. Ross testified under oath that:

   a. Her Young Living distributorship had been terminated;

   b. She had acted as a Young Living distributor only through RCC and EFL;

   c. A company she had earlier formed called Essential Health Care, LLC ("EHC") was dormant, had been formed to start an insurance business, and had never conducted any business; and,

    d.    As a result of Young Living's termination of her distributorship, she did not anticipate any further income from Young Living to her or to any of the companies that she had an interest in.

25. All of Ross' statements in her deposition referenced in the preceding paragraph were false and intentionally false. Ross made them with the intention to deceive Plaintiffs, her judgment creditors, to believe that she would receive no further money from Young Living, that she was judgment-proof, and that they should accordingly cease collection efforts.

26. In truth, Ross and Young Living had agreed in or before August 2011, that Ross would conduct her Young Living distributorship through EHC and that her income would be paid each month to EHC, and no longer to EFL. Defendants entered this agreement because Plaintiffs had filed their motion in the Minnesota action to transfer EFL's stock to Plaintiffs. In September 2011, Young Living paid Ross her monthly distributorship payment through EHC, and mailed this payment from Young Living offices in Utah to EHC at Ross' Minnesota office. Starting in October 2011, Young Living mailed Ross' monthly distributorship payments to EHC from Young Living offices in Utah to Ross' attorney Steven Stucker's office in Carson City, Nevada. The sole purpose of Defendants' actions was to fraudulently conceal Ross' Young Living income from Plaintiffs, and prevent Plaintiffs from collection of their judgment against Ross.

27.  On November 23, 2011, Ross signed the top portion of the same Young Living form signed the prior month by her attorney, Steven Stucker.  In this document, Ross transferred her Young Living distributorship from EFL to EHC, but also "effective for the month of October 2011."  Young Living maintained this document in its Utah office.  Young Living had already commenced Ross' Young Living payments to EHC in September 2011, and Defendants used this document to "paper" their existing fraudulent agreement.  The sole purpose of Ross' and Young Living's acts was to conceal Ross' Young Living income from Plaintiffs, and prevent Plaintiffs' execution of their judgment against Ross.

28.  As a result of Defendants' acts, Plaintiffs were forced to pursue judgment collection proceedings in the Montana, Minnesota and Utah actions, at substantial expense to Plaintiffs.  Defendants and their lawyers vigorously opposed all such actions and filed motions to prevent Plaintiffs from obtaining discovery about Young Living's continuing payments to Ross, or information and documents which would have revealed the fraudulent scheme referenced herein.  Instead of producing the requested information, Ross and her lawyers accused Plaintiffs of harassing and bullying her.

 29.  Ross and her lawyers consistently misrepresented to Plaintiffs that Ross was no longer a Young Living distributor, ostensibly because the Minnesota court had ordered transfer of Ross' EFL shares to Plaintiffs.  Even in connection with

that order, Ross and her Minnesota attorney Anderson refused to produce an EFL shareholder list, but directed Plaintiffs to obtain the information from Ross' attorney Stucker in Carson City, Nevada. The sole intent of Ross and her attorneys in these actions was to force Plaintiffs to engage in wasteful discovery about EFL, although unknown to Plaintiffs, Ross was now conducting her Young Living business through EHC.

30. In the meantime, Ross continued to act as a top Young Living distributor under her "EHC" name, making $44,500 for example in November 2011. Young Living paid Ross/EHC this money through the United States mail, mailed to Ross' attorney Steven Stucker in Carson City, Nevada. This same month (November 2011), Ross had testified in her Whitefish, Montana deposition that she had no income, and that her Young Living distributorship had been terminated. Ross committed perjury in this testimony.

31. Ross continued to act as an important speaker for Young Living, promoting its products, in accordance with her status and responsibilities as a Young Living "Diamond level" member. Ross is now and has been at all times referenced herein one of Young Living's top 10 distributors worldwide. Young Living committed the actions referenced herein to protect its own substantial profits derived from Ross' continued distributorship with Young Living. Ross, as a "Diamond level" distributor, traveled at Young Living expense to numerous

conferences and cruises in exotic locations, such as the Gary Young Seminar at the Marriott Hotel in Waikiki, Hawaii on April 10, 2012 and the Leadership Summit Retreat at the Grand Wailea Waldorf Astoria Resort in Maui, Hawaii on April 11-16, 2012.

    32. As a result of Ross's refusal to produce documents and answer other discovery, the judge in the Minnesota collection proceeding ordered Ross to show cause why she should not be held in contempt. A hearing was set for April 9, 2012. On April 5, 2012, Anderson wrote to the Minnesota judge, asking for "an emergency continuance," saying that the hearing would be a "serious detriment" to Ross. Anderson submitted the affidavit of Dr. Kit Thomas, who said that Ross suffered stress-induced anxiety and depression, was barely able to talk, and noticeably trembled, warranting a "thorough psychological evaluation prior to subjecting herself to examination…" at the hearing. Thomas concluded that "there is a potential for emotional trauma or psychological damage to Ms. Ross if she is compelled to undergo court examination prior to the examination and/or treatment…." The hearing was continued by Judge Sipkins until April 17, 2012. (The April 17 hearing was then continued again until July 13, 2012.) By April 10, as noted above, Ross was in Waikiki and Maui for more Young Life promotional conferences.

    33. The above described acts of Ross and Young Living to conceal assets

and evade Plaintiff s' judgment are part of a long ongoing scheme.  Despite earning over $400,000 annually, Ross claims that she has no personal living expenses.  She testified in her deposition that her several homes in Whitefish and Minneapolis and her two SUVs were all business property and that the funds used to pay for the properties, as well as the funds used to pay the bills for her credit cards, all represent business expenses.  In fact, Ross has been, for a period of years, concealing her personal wealth and income by disguising it as business property and business expense.  On information and belief, Young Living is and has been aware of this and has ratified and/or facilitated these efforts of Ross to conceal her personal wealth and income.

### III.  FIRST CAUSE OF ACTION: RICO

34.  Plaintiffs reallege the allegations in the foregoing paragraphs.

35.  Defendants systematically engaged in a scheme to unlawfully transport, transmit, and transfer in interstate commerce funds, knowing or recklessly ignoring that these funds had been converted and/or taken by fraud.

36.  Defendants devised and executed this scheme with the participation, knowledge, cooperation, and/or acquiescence of each other.

37.  In furtherance of their deceptive scheme, defendants:

    a.    Participated in numerous telephone communications and mailed correspondence across state lines; and,

    b.    Mailed the "EHC funds" each month starting in September, 2011 from Young Living offices in Utah to Ross in either Minnesota or Nevada.

These are "predicate acts" within the meaning of 18 U.S.C. § 1961.

38. These telephone and U.S. mail communications, and money transfers, concealed material facts and/or contained assertions and inferences that were untrue and were made with knowledge of their falsehood and with the intent to deceive or with complete disregard for the truth. These communications served to further the scheme to defraud plaintiffs and to obtain money by false representations. Such actions constituted numerous instances of mail and wire fraud in violation of 18 U.S.C. § 1341 and § 1343.

39. These violations of the mail and wire fraud statutes constituted a "pattern of racketeering" pursuant to the RICO statute, 18 U.S.C. § 1961, because they had the same or similar purpose, results, participants, victims and methods of commission, were interrelated, were not isolated events, and were part of a continuous effort to further the purposes of a criminal enterprise.

40. Defendants were and are jointly engaged in an "enterprise" as that term is defined in 18 U.S.C. § 1961. The defendants were associated in a single enterprise, EHC, Ross' shell corporation which acts as a conduit to funnel Ross'

Young Living income to Ross, to prevent Plaintiffs' seizure of Ross' Young Living distributorship, and to hinder, delay and defraud Plaintiffs in collection of their judgment. Defendants are associated in this enterprise for the purpose of unlawfully selling, transporting transmitting, and transferring funds in interstate commerce, knowing or intentionally disregarding the improper uses to which they were putting the invested funds which had been taken by fraud, and engaged in these actions for their own financial benefit. As a result of Defendants' acts, Defendants have successfully frustrated Plaintiffs' ability to execute on their judgment. Defendants' acts knowingly defrauded Plaintiffs of money due, all connected with a common plan, scheme or motive

41. Defendants conducted the above-referenced enterprise through a pattern of racketeering, utilizing mail and wire fraud as alleged above. Such activity involved and affected interstate commerce and constitutes a violation of the RICO statute, 18 U.S.C. § 1962(c).

42. Defendants entered an illegal agreement to pay Ross her income from Young Living through a corporate shell, EHC, in and through the above-referenced acts. Defendants thereby conspired to conduct or participate in the affairs of an enterprise through a pattern of racketeering proscribed by 18 U.S.C. § 1962(c), which is a violation of 18 U.S.C. § 1962(d). Defendants had knowledge of the scope of the enterprise (described in paragraph 38 above), and knowingly

conspired to further the enterprise through their racketeering activities. Each Defendant agreed to commit two or more predicate RICO acts in furtherance of the conspiracy. Plaintiffs suffered damages caused by the Defendants' conspiracy to violate RICO.

43. By reason of these violations of the RICO statute, Plaintiffs have suffered damage and are entitled to recover treble damages, costs, and attorney's fees from each of the defendants, jointly and severally, 18 U.S.C. § 1964.

## IV. SECOND CAUSE OF ACTION: CONSPIRACY TO COMMIT A FRAUDULENT CONVEYANCE

44. In and through the above-described actions, Defendants entered an unlawful agreement.

45. The specific intent of the Defendants in this scheme was to hinder, delay and defraud Plaintiffs, creditors of Defendant Ross.

46. The above-described acts were committed pursuant to this unlawful agreement.

47. Plaintiffs suffered damages in an amount to be proved at trial as the result of the acts committed pursuant to Defendants' unlawful scheme.

48. The actions of Defendants were intentional, reckless and indifferent and were calculated to harm Plaintiffs.

## V. THIRD CAUSE OF ACTION: CONSPIRACY TO COMMIT FRAUD

49. Defendants formed a conspiracy together in the actions described above.

50.  The sole purpose and intent of Defendants' conspiracy was to prevent Plaintiffs from collection of the judgment owed to Plaintiffs by Defendant Ross. Plaintiffs were prevented from collecting their judgment as the result of Defendants' conspiracy.

51.  In order to achieve this objective, Defendants acted together to deceive Plaintiffs through affirmative acts and through omissions where there was a duty to tell the truth.  The Defendants affirmatively represented to Plaintiffs that Ross' Young Living distributorship, her sole source of income, had or would be terminated.  This representation was false and was knowingly false when Defendants made it, was made with the actual intent to deceive Plaintiffs and did deceive them, causing Plaintiffs damages in an amount to be proved at trial.

52.  Defendants also fraudulently concealed from Plaintiffs that Ross had transferred her Young Living distributorship from EFL to EHC, knowing that this was a material fact to Plaintiffs.  The reason for Defendants' acts of concealment was to defraud Plaintiffs, and to prevent collection of their judgment.  As a proximate result of Defendants' acts of fraudulent concealment, Plaintiffs have suffered damages in an amount to be proved at trial.

53.  The actions of Defendants were intentional, reckless and indifferent and were calculated to harm Plaintiffs.

## VI.  FOURTH CAUSE OF ACTION: PUNITIVE DAMAGES UNDER MONTANA LAW

54. Plaintiffs reallege the allegations contained in the foregoing paragraphs.

55. Defendants' actions and omissions alleged above were outrageous and were done intentionally, maliciously, and with reckless disregard of the consequences to plaintiffs.  Punitive damages are necessary to punish and to deter defendants from repeating such acts and to deter others from engaging in similar acts.

56. Plaintiffs are entitled to punitive damages against all defendants, jointly and severally, in the amount to be determined at trial.

## VII.  PRAYER FOR RELIEF

WHEREFORE, having set forth their causes of action, the Plaintiffs pray for the following relief:

1. For a money judgment of all compensatory damages resulting from the Defendants' conduct in favor of Plaintiffs.

2. For a money judgment of punitive damages in an amount sufficient to punish Defendants and deter future such reprehensible conduct.

3. For a money judgment of all damages, trebled, pursuant to 18 U.S.C. § 1964.

4. For an award of Plaintiffs' attorneys fees and costs.

5. For an award of pre-judgment interest on all liquidated sums.

For such other and further relief as is equitable and just.

6. For such other and further relief as this honorable Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff requests a jury trial for all issues triable by right to a jury.

DATED this 6th day of July, 2012

                                  MORRISON, MOTL & SHERWOOD

                                  BY:  __/s/ John M. Morrison_____
                                       John M. Morrison
                                       Attorneys for Plaintiffs